524-1280 Peoples v. Charles Parvin. Mr. Harris. Good morning your honors and good morning counsel. I'm Assistant Defender Levi Harris here on behalf of my client the appellant Mr. Charles Parvin. May it please the court. Charles Parvin was sentenced to life in prison after being found guilty of 7 counts of predatory criminal sexual assault. Counts 1-3 concerned a young lady named MLM. Those counts are not at issue in either of the issues we talked about in my brief. Counts 4 and 5 concerned a girl named NRG and counts 6 and 7 concerned a girl named ALP. Our briefs raise two issues. I'd like to focus on the second issue today but of course I'm happy to answer any questions you have about either issue. So although counts 4-7 charged Mr. Parvin with four separate acts of PCSA, predatory criminal sexual assault, were committed in four specific separate ways against two different girls. Neither the proposition instructions nor the verdict instructions for those counts outlined for the jury which acts they related to which had been alleged. These omissions denied Mr. Parvin three separate constitutional rights. To be found guilty only upon proof beyond a reasonable doubt of every element of the charged offenses to a unanimous jury verdict and to be protected from double jeopardy. Accordingly this court should reverse and remain for new trial on those four counts. So let's talk about the pertinence acts. These four counts involved four separate charged acts. The first one was penetration against NRG. The second was contact against NRG. The third was penetration against ALP and the fourth was contact against ALP. However in this case there was also multiple uncharged acts that were testified that took place over the course of a year between April 2020 and April 2021. Although the charging document laid out how each count was alleged to have occurred, the charging document didn't go back to the jury when they deliberated. Instead the proposition instructions were only modified to list the different victims. They did not list the different physical acts? Correct. Okay. They were modified to list the different victims but not the specific acts that were alleged. On the other hand those modifications alleging the specific acts were present in counts one through three which again we're not arguing about those but it does show that this was something that the parties were conscious of and the court was conscious of because they saw fit to do this in counts one through three. Notably even the prosecutor herself during closing argument mixed up a couple of these counts when she was speaking to the jury. And there's no allegation from us that this was intentional or this was prosecutorial misconduct. But when she was talking about count four she told the jury well this pertains to the and she mentioned the acts that were actually charged in count five and vice versa. Those two were switched. So if the state's attorney couldn't even keep things straight with the charging document in her hand, the proposition instruction right in front of her, how could the jury be expected to do it once they got back to deliberations? And what is the standard of review here? Standard of review is de novo for several reasons. First of all this is a forfeited error so your honor's review plain error de novo. So we do it plain error here? Yes. And no contention about that. We do have some discussion in our briefs about invited error but this is no contention this was not objected to error. Now counsel did raise an objection in what modifications pertain to what dates these things were to have occurred and that objection was overruled. We don't make any argument about that here. Counsel did not raise the objection that we are talking about here. So what is the prejudice under plain error here? Well your honor, the prejudice No, second pronged plain error is what we're arguing. We don't make a first pronged plain error argument at all. A structural defect. Correct. And I think that to sort of talk about that, I think if your honor's find the error, if your honor's find that the error was committed, then it's clear that these three types of errors have been found to be structural errors. So it's not so much, you know, the steps in plain error was first decide whether an error occurred and then see whether it's one of these other things. And I don't think there's any question that it's the other things. It's the if your honor's agreed that the error was occurred. So the violation of the three rights, let's talk about those. So Mr. Harris, we have to find that the error that occurred before we get to whether it was structural, we have to find that there was error in the failure to identify with specificity what it is you claim, right? Correct. That there was no, that the jury instruction did not delineate sufficiently to advise the jury of what they were weighing in on. But the jury had to have been almost to the point of being confused because the, according to your argument, because the jury instructions would have been so improper that the jury could not have understood them. I think that this is a tricky answer to a very clear question. The answer is I think the jury looking at those didn't understand that they had any confused at all when she made her argument. But nevertheless, she was confused. We know that from the record. And I think the jury was confused, or at least we can presume they were confused when they were back there. The wording of those things was clear, but it did not tell them what they were not permitted to do. So for instance, that they were not permitted to be thinking, oh, well, yeah, there was this other testimony about this thing that could be penetration. What about the verdict forms in this case? Were they clear as to the counts? No, Your Honor. Okay. And I think if the proposition instructions had been clear, then I don't think it would be such a big deal about the verdict forms, but they weren't. I'm talking about four counts to the right, counts 4, 5, 6, and 7. Yes, Your Honor. And you've got two victims, and each victim, two allegations, one penetration and one contact. So that doesn't seem that confusing. I mean, at first glance, you think, why wouldn't you put the mechanism, or why wouldn't you put the specifics? But when you look at it, there's two victims, and each have two counts. That doesn't seem as confusing. Well, and I think that's exactly the assumption that the State proceeded on, because, again, they made those modifications in the first three counts, which are not at issue here. The problem is, and we'll shoehorn these into these different rights, so the problem is, when we're talking about the right to be found guilty only on proof of the charged offenses, if you've only got, well, guilty of sexual penetration, they've heard lots of evidence about instances, unfortunately, nobody's here saying that my client's a saint. Lots of instances that can count as sexual penetration. And so, kind of going back on what Justice Case was asking previously, if your second-pronged client error, the Supreme Court has recently pronounced it, that's rare and structural and has to severely affect the outcome of the trial. Here, it doesn't, not even clear that it's error, but if it's error, is it so severe that it affects the outcome of the trial? It's a structural error that the Supreme Court has said is rare. Your Honor, I would, with respect, I would correct, I would urge that it's not that it affects the outcome of the trial, but it affects the sort of, I think outcome would be a bit closer. I probably overspoke on that regard. It's the first concession I've ever gotten right here. But, yes, Your Honor, I do think that, so if, so, for instance, this most recent case, and the name escapes me right now, but from the Illinois Supreme Court. I think Ed Moon and Jackson were two of them. Yes. What the Illinois Supreme Court said, look, this is not going to discuss in federal plain error, in federal structural error, but for the purposes of Illinois, you don't have a jury oath, then that is structural error. And so, I don't think that we're limited only to the ones that the federal courts have found, and we're not limited to the ones, but they do have to be analogous to the ones that have been found. So those three rights we talk about, I think they've all been found in different cases to be structural error. Let's talk about briefly the right against double jeopardy, and that is if you, the acts that were alleged in all four of these counts could have been either or, penetration or contact. So without telling them what those acts were, the jury could weigh in on, well, I think, you know, these acts constitute, what is he guilty of penetration? Six of them could think, well, the actual acts that were charged in the charging document, six of them could be thinking about the one that was in the other count that pertained to that girl, and they could be punishing them twice for the same offense. Well, my red light is on. Do you hear me? You can finish it, wind up here. Okay, well, could we ask him to talk a little bit about the glove, actual contact? Yes, the skin, yeah, that would be great. Okay. If you want to address that issue. Yes, Your Honors, because the predatory criminal sexual assault is the only one of these major sexual, sex crimes cases that uses this word contact, and so some of these cases were charged as penetration counts, some of them were charged as contact counts. The second district in Curry has said, look, because this word is not in these other statutes, it's not defined, it has to mean something that's different from these things that are defined. So, for instance, criminal sexual assault, aggravated criminal sexual assault, both of those say sexual penetration. Criminal sexual abuse, aggravated criminal sexual abuse, those say sexual penetration and sexual conduct, both of which are discussed in the definition section. Contact is not discussed in the definition section, and so I think we have to presume that when the legislature said contact, they meant the ordinary definition of that, which Curry said requires skin-to-skin contact. I don't think that, you know, the idea that, well, this would produce absurd results, I don't think it would produce absurd results. First of all, as we concede in our briefs, even this count would be the lesser included offense of aggravated criminal sexual abuse, so it's still prescribed even as charged as a lesser included offense, but also the state has all the charging discretion. The state could have charged this count as a penetration count. Penetration can be done with an object, so if it can be done with an object, it would follow that it can be done with what the state says, a condom or a glove or whatever. The state has that discretion when it charges, but once it makes that decision, it has to, you know, it's got to be put to its proofs. If it's charged as a conduct, excuse me, a contact count, it has additional stuff that it has to prove, and I think the Illinois Supreme Court case in Kidd, which we talk about a little bit in our reply brief, mentions the distinctions between those two ways and how they don't mean the same thing. There's a reason that they're either or. Once the state makes that decision, it's stuck with that decision. In this case, it's a contact. Curry says contact requires skin contact, and, you know, so I do think this court, and the state is 100% correct about this, this court does not have to follow the second district's decision in Curry. I do think we're setting ourselves up for a district split if Your Honors would answer that question to the opposite of what Curry said. But doesn't that actually make it somewhat of an absurd rule? I mean, if we take it in a different context, if we're talking about a battery, if I hit you with my fist, skin to your face, that's a battery. But if I had a glove on, would it be a battery because there was no skin to skin? Well, Your Honor, here's what I would say about that. I'm not as familiar with those statutes because I just looked at the sex offense statutes, but I believe that those are in the context of offensive touching, offensive, and it may say contact. It says contact. I don't want to stand by that and be in error, but I believe it says offensive touching. In any case, even if it does say contact, those statutes are their own thing. Obviously, these are related things. This would count as a sexual battery in some other jurisdictions. But because of these, you know, the ones that we talk about where they're using a lot of the same words, they have the definitions that begin there, and contact isn't defined, this is the only statute where it's used, so it's got to mean something different than sexual conduct, which explicitly says it can be done through clothing. So I don't think it's absurd. I do think that there are other answers to it. But I do think also that if it is absurd, the legislature has had time in the wake of all these decisions that have talked about it to amend it, and they haven't. And I don't remember the rule of statutory construction, legislative acquiescence or whatever. So if it is silly, that's on the legislature. But we don't think that it is silly. The only count that this really applies to is count seven, I think. Is that correct? Correct. Penis to hand, if she was wearing a glove. Correct. What if he's wearing a condom and she has a bare hand? Is that not skin to skin then? Your Honor, in that case, I would say that would be a penetration count if the state charged it that way, because there's no reason the condom wouldn't count as an object. Does that make sense? And I also think penetration includes that intrusion. Any, however slight, between the body parts that are specified, I think it could be charged as an intrusion. If he's wearing a condom and has, excuse me, masturbating. Correct. That's not, is that penetration? That wouldn't be penetration. I think it would be penetration if it were a condom on a penis with a hand. And again, none of these facts are savory, but I think it would be. I'll take that action. Okay. Thank you, Your Honor. Okay. Thank you, Mr. Harris. Ms. Wells, we went way over with Mr. Harris. If you need some additional time, we will grant you that so that you can respond to some of his arguments. Okay? When you're ready. Thank you, Your Honor. Your Honor's counsel may please report. We have two issues to add. I will address each of them in turn. I'll start with the first argument, which is in skin contact. And because of the statutory interpretation, the manner of contact required, the sufficiency of the evidence in this case is actually to help overview. However, the evidence clearly supports the conviction on count seven with ALP, because she touched the defendant's bare penis with her hand while she was wearing a thin wear glove that he procured and had her put it back. It was used as an instrument of the offense. This constitutes contact under the statute. Requiring literal skin-to-skin contact is not in the statute. It's not in the battery statute, as Your Honor referred to. It does require physical contact in the battery statute. This is no different. It would be absurd to say you can't commit a battery if you touch someone on their chest or their body and it's covered with clothing or, to be specific, up to the facts of this case, you were wearing a rubber glove. What about if you're wearing clothing? What about if there's clothing in between? Clothing is different. It is distinguishable, and that is specifically what the Curry court was dealing with and the Johnson court was dealing with. I disagree with Curry and Johnson respectfully because it's not in the plain language of the statute, and that's why we urge this court not to follow Curry under certain spaces. You are not required and you are not allowed, because the Supreme Court has not met her or had their say on this issue. But, Your Honor, let me ask you a question. One second. How far do you go between a glove and clothing? Where does a court draw the line on the word contact? How do we define that? Contact was defined by Kitch, and contact is touching. So it could be any touching, even through clothing then. If you follow what Kitch said and what was adopted by Johansson or also used by Johansson and the Supreme Court actually approved Johansson, that is the definition. It is touching. There is no requirement regarding clothing in either of those two cases. They limited it to touching. So if there is no skin-to-skin contact, you can still have a violation of the offense? It is our position that you can still have a violation if there isn't skin-to-skin, and that's the plain language of the statute, because requires contact, which is a touching, and it does not. It is silent as to skin-to-skin. That is something that was read into the statute by the current court, and that violates all the rules of statutory construction. I did want to clarify my position is not that contact and sexual conduct are interchangeable. My language in my brief was imprecise, and I apologize for that. My argument is that sexual conduct is defined. Contact is not. Both require touching, and the skin-to-skin requirement is nowhere in the statute. I sought to make that point. I clearly did not use the precise language for that. The last thing I want to say about skin-to-skin contact is that the workload, regardless, is not clothing. Even my friends on the other side define clothing as something made of cloth. A rubber glove is not made of cloth. It is not. It was an instrument used to commit the offense. He procured the glove. He had her put it on. And to punish someone or to use this as an instructional manual, I found to avoid a penetration, not a penetration, a registered criminal sexual count offense because you use a thin leather glove, or a thin rubber glove like a surgical glove, or you have a prophylactic gun, so it's not skin-to-skin. It's just, it is an absurd result. And because of that, we are asking that you not follow her rate, regardless of where you add it. It's probably to deal with specific clothing, not a prophylactic, not a rubber glove, and therefore they should not be tied. It's distinguishable in that way. The last thing I want to say about count four is that the proper remand is, the proper result is remanded for resentencing. The victim deserves that, and the defendant does not deserve an acquittal just because he's guilty of molester included, and Jackson is specific as to that. My time is short, so if there are no other questions, I'll move back to the jury instruction issue. One question. So on count four, you believe that no remand is necessary, or remand is necessary? I misunderstood. Remand is absolutely necessary because the victim deserves that, and the defendant does not deserve to be acquitted of conduct that he actually committed. And Johnson speaks eloquently on that point, and I have addressed it very extensively in my brief as to why the court should remand as opposed to just vacating the conviction. You're asking, though, for us to affirm on those counts. You're not asking us to remand it. You're saying if we should not vacate it or reverse it, we should remand it if we choose that, but you're still asking for us to affirm? I absolutely ask you to affirm it as if it were only him. Our side of that hurry is that recalling that you would remand instead of vacate.  Yes? Okay. I misunderstood, which is why I asked the question. So, Justice Barberos, help me out. Thank you. Thank you. So we, in this case, as to the jury instruction, it is a plain error review. Defense is only arguing structural error, and I would direct the court to move in Jackson as to how limited that is, and only if there was an issue with the unanimity of the jurors. If the court finds that there was a unanimity, would it rise to the second prompt plain error under Illinois law? Because they did not argue first prompt plain error, they have waived that argument, and I would refer you to court to back up. However, the first step of plain error analysis is if there was any error, and in this case, we were FLIPIA compliant. As to MFM, there were three counts of sexual penetration. One of the ways that predatory criminal sexual assault can be charged, and in those instructions, the conduct of the defendant, the actual physical acts that he committed, were included in that instruction. The only reason that they did not include that in Counts 4, 5, 6, and 7 is because to each victim, there was one count of penetration and one count of contract. Completely different offenses, completely different ways of charging them, and because of that, there was no reason, and it was not here, to not differentiate. They differentiated for MFM when they needed to. They did not differentiate for MGAP because it was not required. FLIPIA refers to the same offense, and I would point the court's attention to FLIPIA. Not only was it the same offense, it was the same actual conduct committed in two different locations, and the jury was given no instructions other than it's a different act. So that is why there was error in FLIPIA, and this is not FLIPIA. Even FLIPIA says general verdict forms are still accepted and appropriate. As I pointed out in the Harper case, the way that the penetration is committed, the way the conduct is committed is surplusive, and it is not structural error to include or to not include the specific physical act. The evidence was not overlapping in a way that created confusion with the jury, and they're presumed to follow the instructions. The instructions define penetration. In separate instructions, the jury was told they had to be unanimous as to each charge. They were. The cardamon is absolutely inapplicable here because it was the trial court that refused an instruction. We don't have any instruction being offered. As a matter of fact, we have acquiescence. I'm not going to call it a criteria because it's not a criteria. It's acquiescences. It's two separate things. And the defendant needed an affirmative action to ask for things to be included in the instruction and chose not to ask for physical acts. That goes beyond a menial failure to object, and therefore, point and error review is barred by CASADA. Contrary to defendant's connected contention, this is natural way with all point and error review of a jury instruction. It applies the law, I guess. It's referred and reassigned under the lines of QDAC. We've got to tell the plaintiff to kind of say no objection to the admission of evidence. This is no different. I need to ask you a question. Are you saying that we can't review this for point and error? I'm hearing two different arguments here. Right. So we, as a position of the state, that acquiescence prohibits point and error review. Acquiescence by the defendant in the giving of the jury instructions? Yes, ma'am. Yes. Okay. If this court does not find acquiescence, then we are at point and error review. So we only get to point and error if this court does not find that they acquiesced to the instruction. Is acquiescence the same as sitting in a jury instruction conference and not objecting to the instruction? No. She actually asked for a modification to this instruction. Correct. They were modified. So how can there be acquiescence? Because she chose to ask for a modification one way and not to ask for the specific acts to be included. So it was affirmatively approving of the jury instruction, not just sitting back and saying, you know, not registering an objection whatsoever. And I want to point out that in the case of Adam, they specifically said, I don't object. And that's all they said within the admission of the evidence. I don't object. Now it's determined to be acquiescence. Was that the giving of a jury instruction or the admissibility of evidence? It was admissibility of evidence, Your Honor. So I'm having a tough time making the jump between admission of evidence and an instruction conference where the parties are sitting around and the defense attorney says, I would like these modified. I don't see how that's acquiescence. Even under the case that I cited in Dallas, which was a second district case that was just decided in 2026 as persuasive authority, all they did was say no objection to a jury instruction. That was determined under the second district to be acquiescence. And they probably explained it much more eloquently than I can. But I don't see a difference between saying I'm not going to, I do not object to the admission of that evidence, and I do not object to the giving of that instruction. It is still a statement by the defense. Go ahead and use it as an instruction. The important thing I want to point out finally and lastly is that the defense relies on the prosecutor's confusion and opposing argument. We agree that the prosecutor was confused. They referred to opposite counts regarding NG in their argument as far as raising the air or as far as explaining what they were saying was penetration versus tactic. However, what the court has to consider is whether the jury instruction caused confusion, not the prosecutor's statement. Because we are on a jury instruction issue. And if the jury instructions were clear, then we don't have a problem with the jury instructions. The jury instructions were clear. As I started out my argument, we were looking at compliance. And they did not raise a freestanding claim of either ineffective counsel, assistance of counsel, or not objecting to the prosecutor's misstatement. Nor did they raise a prosecutorial misconduct, whether it was intentional, which it wasn't, or just a mere misstatement. Those claims were outraged. And so you can't piggyback those claims and try to say, oh, now we have a jury instruction issue where the instructions were really clear on our face. One count of conduct, one count of penetration, and those were defined. Undercover, I'm sorry, hard work, no more is expected. Okay. There are no other questions. I'm going to have you wind up here. No other questions. Yep, I'm done. Okay. I would ask the court to affirm all of the counts as though the defendant received a fair trial. The jury instructions were clear and the evidence was sufficient. Thank you. Thank you very much, Ms. Wells, for your argument. You're welcome. Comments? Your Honor, I want to point out that Ms. Wells and I have had a very collegial relationship, and so when she said that she had misspoken about sexual conduct and contact, that's correct. We fell into that same error a little bit in our opening brief. And I also want to say both of us fell into the same error of saying rubber glove on count seven, which we talked about in the issue first. The victim never said rubber glove, and although there was a glove that was recovered, nobody ever identified that glove as being the glove that was used or even a glove that was used. So I think both the state and us fell into that with rubber glove and made a connection that the actual evidence of trial never made. I don't think that makes a difference. I don't think that's what the issue turns on, but I did want to correct that. Speaking to the second issue first, counsel said that because we can't say that we can't look at the prosecutor's arguments as to whether confusion came from the jury instructions if the jury instructions on their case were clear. I don't think that's the law. We're not raising an issue that counsel did this, trial, state's attorney did this on purpose, but in evaluating whether jury instructions had misled the jury or whether there was a risk they misled the jury, courts always look to, well, how was this argued in the arguments to see, well, was the risk ameliorated somehow by arguments or was it exacerbated? Here it was clearly exacerbated. So I think that that is still relevant even though it doesn't make a second issue. But I don't know how we, if you assume that the jury instructions were adequately stated the law as amended, you have no problem with that except it didn't contain all the specifics. But they stated the law correctly. I think that they certainly followed the pattern jury instructions. Right, the IPI, the criminal IPI. So what I would point out about this, an analog might be People v. Herron, which was the seminal case that talked about a plain error in jury instruction. And in that case, the instruction that had been given comported exactly with what the IPI was in that case. And the court said, look, this tended to mislead on these identification factors that have since been amended by the Illinois Supreme Court so that the ors are not in there anymore. But they followed that to a T, and that was still plain error in that case. But we don't have that here. We don't have that. It's different instruction. I'm asking if the instruction itself, as amended, correctly stated the law to the jury. You don't have any quorum with that. I don't have any quorum that it correctly states the law. I have a quorum that the risk created by putting that without putting something else, without making a modification. Okay, so you don't have a quorum with the IPI as amended. My question is, how do you make the jump to plain error, to show there was error, once you have a state's attorney making a mistake in the closing argument if the IPI given was correct? I think, Your Honor, the same way that you have with Filippiak. And I don't find that Filippiak is that different from the facts of this case. Counsel said, well, Filippiak involved two counts that involved the same exact conduct on two different days. We don't have that here. We do have that here. Unfortunately, the two young ladies, when they were talking in their advocacy center interview, talked about these same actions that took place on multiple days over the course of a year. And so I do think that same risk that was present in Filippiak, where the instructions did all that they needed to do legally, were nevertheless found to create that real risk that they didn't have a unanimous jury verdict. You can see that there's less risk in the counts 4 through 7 than there are in counts 1 through 3, because in counts 1 through 3, it's the same conduct, so you have to differentiate the type of conduct. In counts 4 through 7, it's one count penetration, one count conduct for each victim. You think there's less risk in that situation? I wouldn't. I would say this. I would say there's less risk of confusing the same conduct and putting it in, because there were no contact counts. So there's less risk, certainly, that the jury's going to put this in the wrong analysis. I would also say that part of the reason that risk is lower with those counts is that that young lady testified about far fewer actual incidents that occurred. She was older, much more specific, and so there wasn't nearly as much other crimes evidence and testimony that could have been misconstrued by the jury in those counts. If I could just very briefly talk about that count 1. Go ahead. I don't think, as we've said in our briefs, I don't think that it matters that a rubber glove was used. I don't think it matters whether it's clothing. I don't think it matters whether rubber counts as cloth. I don't think that to say that contact is required would give a primer to would-be defendants on how to do this and get away with it. I think that if anybody did this, they should be on notice that this could be charged as aggravated criminal sexual abuse or as predatory criminal sexual assault as penetration. The issue is not, well, defendants are going to get away with this now because they had this trick to get around it. It's quite a drop, though, from predatory criminal sexual assault, which is a class X, 6 to 30, versus add criminal sexual abuse, which is a class 2, 3 to 6. That's corrected on it, and I think that that's why if a prosecutor wants to go after somebody like this, then they would exercise their discretion in charging it as a penetration count, which would comport with the statute. Anything else or questions? Appreciate it, Your Honors. Thank you very much. Thank you both for your arguments here today, Ms. Wells. We appreciate you coming in. This matter will be taken under advisement. We will issue an order in due course.